UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22 C 4467 |
| ) | |
| PIERE PAOLO GENNELL, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Piere Paolo Gennell, once a high-ranking member of the Latin Kings, pleaded guilty to conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 and was sentenced to 210 months' imprisonment. He now moves the court pursuant to 28 U.S.C. § 2255 to vacate that conviction and sentence. He argues that his three appointed lawyers were ineffective for not moving to dismiss the RICO charges and that the court miscalculated his criminal history score at sentencing. For the reasons explained below, Gennell's Motion to Vacate, Set Aside, or Correct Sentence [1] is denied.

## BACKGROUND[1]

Petitioner Gennell was a long-time member of the Latin Kings street gang. (Plea Agreement [*1064] at 3–4.) The Latin Kings are one of the largest street gangs in the United States, divided into different "regions" throughout the country, with each of these regions further divided into smaller "sections" of the gang. (*See* Presentence Investigative Report ("PIR") [*1097] ¶ 6; *see also* Government's Version of Offense ("GV") [*1097] at 2.) Each of the various sections of the gang contain their own hierarchical structure with distinct leadership positions, including: a leader or "Inca"; a second-in-command or "Cacique"; a "Chief Enforcer" and an "Enforcer" (tasked with supporting the Inca and Cacique and ensuring observance of established gang rules); a

---

[1] Citations to Gennell's criminal docket (No. 16 CR 462) are denoted with an asterisk. All other citations are to Gennell's civil docket (No. 22 C 4467).

"Treasurer" (responsible for managing the gang's finances); and non-ranking members called "soldiers." (GV at 2.) High-ranking members of the gang's sections would sometimes serve in leadership roles, referred to as "Nation" positions, within their designated region. (*Id.*) A central responsibility of the gang's regional leadership was to diffuse conflicts between the different sections of the Latin Kings. (*Id.*)

Petitioner Gennell joined the Maywood section of Latin Kings in 2008 as a soldier. (Plea Agreement at 3.) The Maywood Latin Kings were part of the Midwest region of the gang and occupied territory in Maywood and Melrose Park, Illinois. (*Id.*) As a soldier for the Maywood Latin Kings, Gennell was tasked with conducting "security" in the neighborhood, which involved "flashing gang signs, protecting the territory, and shooting on sight rival gang members and 'runaways' (former members of the gang who were no longer in good standing) who entered that territory, or if no gun was available 'bricking' (throwing a brick or a bottle) or beating them." (*Id.* at 5.) Gennell's role also included carrying out "violations," that is, beatings of fellow gang members who "violated the [gang's] rules or questioned authority." (*Id.*) Gennell quickly climbed the ranks, and by 2013 was the Inca of the Maywood Latin Kings. (*Id.* at 3.) As the leader of the gang's Maywood section, Gennell was responsible for directing the activities of the Maywood Latin Kings, including "issuing orders and violations, moderating disputes amongst members, and coordinating with regional gang leadership and the leadership of other sections of the Latin Kings." (*Id.* at 3–4.) By approximately 2015, Gennell held a Nation position within the Midwest Region of the Latin Kings, overseeing multiple sections of the gang. (*Id.* at 4.)

I.  **Indictment and Plea Agreement**

On July 21, 2016, Gennell was indicted by a federal grand jury, along with fourteen of his fellow gang members. (*See* Indictment [*4] at 1–18.) Gennell was charged in four counts of the nineteen-count indictment: Count One charged a racketeering conspiracy, in violation of 18 U.S.C § 1962(d). (*Id.* at 1–14.) Counts Two and Three charged him with violating 18 U.S.C § 1959(a)(5) for conspiring, in aid of racketeering, to commit murder and committing attempted murder. (*Id.* at

2

15–17.) And Count Four charged him with committing assault with a dangerous weapon, in aid of racketeering, in violation of 18 U.S.C § 1959(a)(3). (*Id.* at 18.)

On April 1, 2021, on the eve of his long-scheduled trial, Gennell pleaded guilty to Count One (RICO conspiracy). In a written plea agreement [*1064], Gennell admitted that

> [b]eginning no later than in or about 2008, and continuing to in or about July 2016 . . . [he] knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings street gang through a pattern of racketeering activity . . .; that the Latin King street gang was an enterprise, as defined in Title 18, United States Code, Section 1961(4); that [he] agreed that a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Latin Kings street gang; and that the Latin Kings street gang was engaged in, and its activities affected, interstate commerce; all in violation of Title 18, United States Code, Section 1962(d).

(Plea Agreement at 2–3.) The plea agreement details five predicate acts of racketeering carried out on behalf of the gang, either by Gennell directly or at his command. First, Gennell admitted to conspiring to murder rival gang members and runaway Latin Kings to advance the purpose of the gang. (*Id.* at 6.) The plea explains that he "knew and agreed that Latin King members . . . did in fact murder, attempt murder, and physically harm rival gang members and 'runaways,'" and that, as Inca, he both participated in these acts and ordered other members to carry them out to "advance the purpose of the Latin Kings." (*Id.*) Second, Gennell admitted that on July 12, 2014, he ordered members of the Maywood Latin Kings to set a rival gang member's car on fire to "scare the rival gang member and further [the Latin Kings'] interest in protecting the neighborhood." (*Id.* at 6–7.) Third, Gennell admitted in his plea that he extorted local drug dealers by "order[ing] other Latin Kings to tax anyone they saw or knew selling drugs in Maywood territory." (*Id.* at 7.) Fourth, Gennell admitted that he sold a total of approximately fourteen grams of cocaine to an individual who was working with law enforcement on or around November 12 and December 2 of 2015. (*Id.* at 8.) Finally, he admitted in the plea that in a consensual search of his home on July 25, 2016, law enforcement officers found a Glock Model 26 9-millimeter handgun, a Ruger Model P89DC 9-millimeter handgun, approximately 65 grams of cocaine, and a copy of the Latin Kings

3

manifesto—all of which Gennell acknowledged he "knowingly and intentionally stored" in his residence. (*Id.* at 8.)

As part of the plea agreement, Gennell waived his right to appeal his conviction or to challenge the conviction through a collateral appeal—a waiver that preserved only his right to assert a claim of involuntariness or ineffective assistance of counsel. (*Id.* at 21.) During his prosecution, including during his plea negotiations, Petitioner was represented by three experienced criminal defense attorneys: Mark Kusatzky, Richard Kling, and Clarence Butler. [*See* *358, *637, *930, and *941.]

Petitioner was sentenced on September 7, 2021. [*See* *1121.] Prior to the sentencing hearing, U.S. Probation Officer Kathy Kiriklakis submitted a Presentence Investigation Report ("PSR"), documenting Gennell's guilty plea to Count One of the Indictment, describing the various relevant sentencing considerations, and calculating Gennell's guideline imprisonment range at 188 months to 235 months based on a total offense level of 34 and a criminal history category of III. (*See* PSR at 5–27.) Gennell's attorneys filed an objection to the PSR, arguing that (1) the application of a leadership enhancement under U.S.S.G. § 3B1.1 was inappropriate because he was "no more culpable" in leadership than other members of the gang and (2) the court should decline to add a criminal history point under U.S.S.G. 4A1.1(c) for Gennell's 2007 misdemeanor marijuana-possession conviction because Illinois law had since decriminalized the offense. (Objections to the Presentencing Report and Sentencing Memorandum [*1111] at 1–2.) The court ruled those objections at sentencing, overruling his first objection but sustaining the second. The result was a reduction in the advisory guidelines range to 168 to 210 months' imprisonment. (*See* Tr. of Sentencing Proceedings [*1155] at 195-203.) After evaluating the factors outlined in 18 U.S.C. § 3553(a), the court sentenced Gennell to a prison term of 210 months. (*Id.* at 224.)

On August 23, 2022, Gennell filed the present § 2255 habeas petition pro se.[2] The central claim of his petition is that his lawyers were ineffective in failing to file a motion to dismiss the RICO charges in the Indictment because, according to Petitioner, his alleged conduct did not sufficiently affect interstate commerce to trigger RICO's jurisdictional hook. (Mem. of Law and Authorities in Supp. of Pet. Motion ("Pet'r's Mem. of Law") [3] at 2.) "[C]onstru[ing] [his] pro se filing[] liberally," *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), the court also understands that Gennell claims that this court miscalculated his criminal history points at sentencing by erroneously counting a 2008 misdemeanor theft of stolen property. (*Id.* at 16.) Finally, Gennell identifies a "clerical error" in the court's Judgment of Conviction Order [*1124], specifically that it misstates his offense as "Murder, First Degree," and so asks the court to correct this error pursuant to Federal Rule of Criminal Procedure 36. (*Id.* at 15–16.)

## DISCUSSION

A habeas petitioner is entitled to relief under 28 U.S.C. § 2255 if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The court must grant the petitioner a hearing on the motion "unless the record and motion 'conclusively show that [he] is entitled to no relief." *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021) (citing 28 U.S.C. § 2255(b)). Relief under § 2255, however, is an "extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Because a post-conviction petitioner has had that opportunity, a court generally cannot grant relief under § 2255 for a claim that was not first raised on direct appeal. *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). An exception to this requirement is that a petitioner may raise an ineffective assistance of counsel claim in a § 2255 petition whether or not he raised the claim on direct appeal. *United States v.*

---

[2] Gennell did not file a direct appeal of his conviction or sentence.

5

*Cates*, 950 F.3d 453, 457 (7th Cir. 2020) (citing *Massaro v. United States*, 538 U.S. 500, 504–05 (2003)).

I.      **Ineffective Assistance of Counsel Claim**

Under *Strickland's* two-pronged test, to prevail on his ineffective assistance of counsel claim Gennell must demonstrate both that his lawyers' performance was deficient, and that he was prejudiced by the deficient performance. *Coleman v. United States*, 79 F.4th 822, 831 (7th Cir. 2023) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The performance prong asks whether his lawyers' representation fell below "an objective standard of reasonableness considering all the circumstances." *Bridges*, 991 F.3d at 803 (citing *Hinton v. Alabama*, 571 U.S. 263, 272–73 (2014)). A lawyer has a duty to "make reasonable investigations [of law and fact]" and when the lawyer has done so, deference must be given to counsel's strategic decisions. *Id.* "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012) (internal quotation marks and citations omitted). As for *Strickland's* prejudice prong, Gennell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Shannon v. United States*, 39 F.4th 868, 877 (7th Cir. 2022) (internal quotation marks and citations omitted). "Generally, under *Strickland*, when claiming trial counsel was ineffective for failure to file a motion, petitioner must prove that such motion would have been meritorious, given that a court must defer to counsel's articulated strategic reasons for the decision not to file said motion." *Rollins v. United States*, No. 08-CV-665-DRH, 2011 WL 3667522, at *5 (S.D. Ill. Aug. 21, 2011) (citing *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)). The burden of establishing both prongs of *Strickland* falls on the petitioner and "the court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*

Gennell claims that his three lawyers were ineffective for failing to file a motion to dismiss the RICO charges brought against him in the Indictment, as well as for later allowing him to plead

6

guilty to Count One. The gist of his argument is that the Latin Kings did not engage in crimes sufficient to trigger RICO's jurisdictional element. (Pet'r's Mem. of Law at 9.) RICO criminalizes, in pertinent part, conspiring to "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Farmer*, 38 F.4th 591, 602 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 841 (2023) (citing 18 U.S.C. § 1962(c)–(d)). To establish a RICO conspiracy charge, the government must show an agreement to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. *Id.* (citing *United States v. Brown*, 973 F.3d 667, 682 (7th Cir. 2020)). "'Racketeering activity' includes murder, attempted murder, arson, robbery, extortion, and drug trafficking." *Id.* (citing 18 U.S.C. § 1961(1)). A "pattern" of racketeering activity requires at least two related predicate acts of racketeering committed within a 10-year period. *Id.* Notably, however, a RICO conspiracy charge "does not require proof that the defendant committed two predicate acts of racketeering, . . . that he agreed to commit two predicate acts, . . . or, for that matter, that any such acts were ultimately committed by anyone." *United States v. Tello*, 687 F.3d 785, 792 (7th Cir. 2012) (internal citations omitted.) Rather, "in order to convict a defendant under section 1962(d), the government need only prove that he agreed that some member(s) of the conspiracy would commit two or more predicate acts, not that the defendant himself committed or agreed to commit such acts." *Id.* at 793. Finally, to prove a RICO offense, the government must establish that the enterprise was engaged in interstate commerce or that its activities affect interstate commerce. *United States v. White*, 582 F.3d 787, 803 (7th Cir. 2009). The government's burden here is slight, however, as it need only establish "[a] minor or minimal influence on interstate commerce." *Id.* (quoting *United States v. Farmer*, 924 F.2d 647, 651 (7th Cir. 1991)); *see also United States v. Espinoza*, 52 F. App'x 846, 849 (7th Cir. 2002) (holding that RICO offense requires only "a de minimis nexus between the activities of the . . . enterprise and interstate commerce").

Gennell's challenge to this charge has little merit. To begin, Gennell explicitly admitted to all of the elements of a § 1962(d) violation as part of his plea agreement; specifically, he

acknowledged that (1) the Latin Kings operated as a criminal enterprise from at least 2008 to 2016; (2) that the enterprise participated in racketeering activity including acts of violence, arson, extortion, and drug trafficking; (3) that he agreed that he or his co-conspirators would commit at least two acts of racketeering activity in furtherance of the enterprise; and (4) that these activities affected interstate commerce. (*See* Plea Agreement at 1–8.) Beyond his own admissions, the record indicates that the Latin Kings had ample ties to interstate commerce. For example, the government seized guns from Petitioner that were manufactured outside the state of Illinois. (*Id.* at 8; *see United States v. Benabe*, 436 F. App'x 639, 659 (7th Cir. 2011) (finding that activities of street gang substantially affected interstate commerce where government recovered firearms that were manufactured out-of-state from gang members).) The record also shows that Gennell sold narcotics and that he and his fellow gang members extorted drug dealers. (*Id.* at 7–8; *see United States v. Rogers*, 89 F.3d 1326, 1338 (7th Cir. 1996) (noting that "drug dealing is an economic activity that affects interstate commerce").) Aside from the guns and drugs, the Latin Kings had a sophisticated financial system wherein members were required to pay "dues" to the gang's Treasurer, who would apportion this money to pay for "weapons, funeral costs, legal fees, commissary, and other gang costs"— economic activities carried out in furtherance of the Latin Kings that plainly affect interstate commerce. (GV at 2; *see also* Indictment at 2–3 (noting that the Latin Kings operated "across the United States" including in "Chicago, the suburbs of Chicago, and the Northern Indiana area").)

Facing this bevy of evidence portraying a criminal enterprise with vast ties to interstate commerce, and RICO's minimal interstate commerce requirement, Gennell invites the court to adopt a heightened commerce standard that was employed by the Sixth Circuit in *Waucaush v. United States*, 380 F.3d 251 (6th Cir. 2004). The court in that case required the government to prove a substantial effect on interstate commerce when the enterprise (a street gang) engaged only in intrastate and noneconomic activity; the court held that "where the enterprise itself did not engage in economic activity, a minimal effect on commerce will not do." *Id.* at 256. The Seventh

Circuit has not adopted the novel approach espoused in *Waucaush,* and other circuits have explicitly questioned its validity. *United States v. Cornell*, 780 F.3d 616, 622 (4th Cir. 2015) ("*Waucaush* is not the law in this Circuit and we have doubts about its validity, particularly in light of *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), where the Supreme Court more recently reiterated that 'when a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'"); *see also United States v. Nascimento*, 491 F.3d 25, 29 (2007). In any event, the facts of *Waucaush* distinguish that case from this one: the street gang at issue there did not involve itself "in any sort of economic enterprise" and instead had an exclusive focus on "violence *quo* violence," a fact that was central to the *Waucaush* court's holding. *Waucaush*, 380 F.3d at 256. In this case, in contrast, it is undisputed that the Latin Kings partook in numerous economic endeavors, including drug trafficking and extortion, and operated interstate. *Id.* at 255–56 (recognizing that when an enterprise engages in economic activity, a minimal impact on commerce satisfies RICO's jurisdictional hook). Accordingly, assuming that *Waucaush* has any persuasive value, it has no application in this case, and his attorneys were not ineffective in declining to challenge the RICO charges on the strength of that decision.

In light of Gennell's own admissions and the voluminous evidence of the Latin Kings' activities, the court finds no basis to conclude that Petitioner's lawyers were ineffective in failing to challenge the RICO charges in the Indictment. *See Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) ("The Sixth Amendment does not require counsel . . . to press meritless arguments before a court." (quoting *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)). Nor is there any basis for the conclusion that they were ineffective in advising him to plead guilty to Count One. To the contrary, counsel negotiated a very favorable plea deal, one that required Gennell to plead guilty to a single count that carried a maximum 20-year sentence and resulted in dismissal of three other counts. There is no basis here for an ineffective assistance claim.

## II. Calculation of Criminal History Score

In a single line in his petition, Gennell argues that the court miscalculated his criminal history score by counting a 2008 theft-of-stolen-property conviction against him. (Pet'r's Mem. of Law at 16 ("Gennell respectfully request [sic], that this court 'reconsider its sentencing finding that his misdemeanor state conviction with non jail time was presented by the Presentencing Report' qualified as a second conviction 'to sentence him on category 'TWO' under the USSG Manual'.) This claim, too, is meritless. Gennell stipulated in his plea agreement that in 2008 he was sentenced to one year of supervision after being convicted of misdemeanor theft in the Circuit Court of Cook County, Illinois, a sentence for which he received one criminal history point pursuant to Guideline §§ 4A1.1(c) & 4A1.2(c). (Plea Agreement at 14.) Moreover, this challenge has been waived. In his plea agreement, Gennell "waive[d] his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (*Id.* at 21.) There is no evidence that Gennell's guilty plea was not voluntary and indeed, he does not ask this court to vacate his plea agreement. (*See* Tr. of Plea Proceedings [1193] at 35 ("The Court: So you understand the appeals waiver? Gennell: Yes, your Honor. The Court: All right. Is your decision to plead guilty entirely voluntary? Gennell: Yes, your Honor. The Court: You understand that the final decision about your sentence will be made by me? Gennell: Yes, your Honor.").) The collateral-attack waiver in Gennell's plea agreement thus bars his claim that the court incorrectly calculated his criminal history score. *See Flores v. United States*, 653 F. App'x 472, 475 (7th Cir. 2016) (holding that "broad collateral-attack waiver" in guilty plea barred § 2255 claim where plea "undoubtedly was voluntary.")

Even if he had not waived it, Gennell's sentencing challenge would fail. A guilty plea, including its voluntariness and intelligence, "can be attacked on collateral review only if first challenged on direct review." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). Gennell did not file a direct appeal of his

sentence, and he has therefore procedurally defaulted this claim. (Government's Resp. to Pet'r's Motion [7] at 18–19.) Gennell could overcome his procedural default "by showing that he suffered a fundamental miscarriage of justice—a high bar that requires a showing of actual innocence." *White v. United States*, 8 F.4th at 557 (citing *Smith v. McKee*, 598 F.3d 374, 387–88 (7th Cir. 2010) (internal quotation marks omitted)). Neither Gennell's opening brief nor his reply brief makes any such showing. (*See* Pet'r's Mem. of Law at 16; Pet'r's Reply [8] at 7.) Consequently, his claim here is both waived and procedurally defaulted.

### III. Clerical Error in Judgment of Conviction

Finally, Gennell's petition raises an issue concerning his Judgment of Conviction [*1124]. The judgment correctly notes that Gennell pleaded guilty to Count One of the Indictment, which was a RICO conspiracy offense in violation of 18 U.S.C. § 1962(d); however, Gennell points out that under the heading "Title & Section / Nature of Offense," the judgment states "18:1962-0100.F Murder, First Degree," when in fact the offense he pleaded guilty to was RICO conspiracy, not murder. (*Id.*) Thus, Gennell requests that the court correct this clerical error, pursuant to Federal Rule of Criminal Procedure 36.

Rule 36 provides that "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. The government agrees with Petitioner that the description of Gennell's offense in the Judgment of Conviction is erroneous, and further notes that three of Gennell's co-defendants also pleaded guilty to Count One of the Indictment, and their Judgments of Conviction describe the offense as either "18 U.S.C. Section 1962(d), 18 U.S.C. Section 1963(a) Racketeering Conspiracy," [*614, *623], or "18:1962-7480.F Racketeering," [*1132]. The court acknowledges that the discrepancy between the offense to which Gennell pleaded guilty and the description provided in the Judgment of Conviction is an oversight on the court's part.

11

Accordingly, the court will issue an order to correct the description of the offense to read "18 U.S.C. Section 1962(d), 18 U.S.C. Section 1963(a) Racketeering Conspiracy."[3]

## CONCLUSION

Gennell's 28 U.S.C. § 2255 petition [1] is denied. The court finds that no reasonable jurists could conclude that he has made a "substantial showing of the denial of a constitutional right," and therefore declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2). The court treats Gennell's Federal Rule of Criminal Procedure 36 claim as separate from his § 2255 petition and orders that Gennell's Judgment of Conviction be corrected consistent with this opinion.

ENTER:

Dated: April 25, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3] Gennell's petition also complains that the PSR misstates the offense he pleaded guilty to; however, upon the court's own review, and as government notes, the PSR does not contain the same clerical error that is present in the Judgment of Conviction. (*See* PSR at 2.) Accordingly, there is no need to alter Gennell's PSR.